UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY RAY, | Case No. ED CV 08-0523 PJW |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration, | |
| Defendant. | |

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Because the Agency's decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence, the decision is affirmed.

In October 2005, Plaintiff applied for SSI and DIB. (Administrative Record ("AR") 87, 91.) After the Agency denied the application initially and on reconsideration, Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ"). (AR 49, 60, 66-68.) On October 10, 2007, Plaintiff appeared with counsel at the hearing and testified. (AR 6-29.) On November 1, 2007,

the ALJ issued a decision denying benefits.  (AR 2, 34-48.)  Plaintiff appealed to the Appeals Council, which denied Plaintiff's request for review.  (AR 2-4.)  She then commenced this action.

Plaintiff claims that the ALJ erred by failing to properly consider: 1) lay witness testimony (claim one); 2) the treating doctors' opinions (claims two and three); 3) the severity of Plaintiff's mental impairment (claim four); and 5) the functional limitations caused by the impairment (claim five).  (Joint Stip. at 3-6, 8-10, 13-15, 17-18, and 19-20.)  In addition, Plaintiff alleges that the ALJ's hypothetical question to the vocational expert did not include all of Plaintiff's functional limitations (claim six).  (Joint Stip. at 20-22.)  For the reasons set forth below, the Court finds that these claims are without merit.

In her first claim, Plaintiff contends that the ALJ ignored the written "testimony" of her daughter, Andrea Martin, who completed two third-party "function reports."  (AR 156-63, 167-74.)  In the first one, dated December 21, 2005, Martin reported that Plaintiff stayed in bed most of the time, occasionally accompanying her to buy food or go to church.  (AR 156.)  Martin also reported that Plaintiff was unable to go out in public or be around people because she was paranoid, no longer cooked dinner, seemed to no longer care about things, and had to be reminded to do everyday chores such as keeping herself clean or doing laundry.  (AR 157, 158.)  Martin also stated in the report that Plaintiff did not hear very well and was forgetful, which made it hard for her to follow instructions.  (AR 161.)  In a second report, dated June 5, 2006, Martin essentially repeated her claims from the first report.  (AR 169-72.)

1    An ALJ is required to consider statements of lay witnesses,
2 whether these statements are made at the administrative hearing or
3 submitted in writing before the hearing, and to give "reasons that are
4 germane to each witness" for discounting them.  *Stout v. Comm'r, Soc.*
5 *Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Schneider v. Comm'r,*
6 *Soc. Sec. Admin.*, 223 F.3d 968, 974-75 (9th Cir. 2000) (holding that
7 ALJ must consider lay witness evidence in the form of written
8 submissions).

9    The ALJ noted Martin's reports that Plaintiff "essentially does
10 nothing but stay in bed or watch television . . . [and] needs
11 reminders in everything including to take care of her personal hygiene
12 and to take medication."  (AR 46.)  The ALJ found, however, that these
13 reports did not warrant a finding of greater limitation because
14 Plaintiff's daily activities "reflect a dependent lifestyle" that
15 appears to be one of choice rather than "due to any established
16 impairment."  (AR 46.)  This reason was germane to the witness and is
17 sufficient to support the ALJ's decision to discount the witness's
18 testimony.  To the extent that the ALJ may not have considered all of
19 the daughter's observations, any error was harmless in that the Court
20 can confidently conclude that no reasonable ALJ accepting these
21 additional observations would have concluded that Plaintiff was
22 disabled.  *See Stout*, 454 F.3d at 1056.  For these reasons, this claim
23 is rejected.

24    In her second claim, Plaintiff contends that the ALJ did not
25 adequately discuss the findings of a treating psychiatrist.  (Joint
26 Stip. at 8-10.)  For the reasons set forth below, the Court disagrees.
27    In general, a treating doctor's opinion is given deference over
28 the opinions of non-treating doctors.  *Lester v. Chater*, 81 F.3d 821,

830 (9th Cir. 1995). Where a treating doctor's opinion is contradicted by another doctor's, an ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record, for relying on the non-treating doctor's opinion instead of the treating doctor's opinion. *Id.*

On February 7, 2004, four months before the alleged onset date in this case, Plaintiff was brought to Arrowhead Regional Medical Center by police for a "5150" evaluation after complaining of visual and auditory hallucinations.[1] (AR 175-81.) A psychiatrist, whose name is illegible, filled out an evaluation/admission form, in which he or she noted that Plaintiff was disheveled, but cooperative and alert, and that her memory was intact and her speech normal in rate, rhythm, and tone. (AR 177.) Plaintiff denied suicidal or homicidal ideations. (AR 178.) She admitted using methamphetamines for the previous month, including just two days before she was brought in. (AR 177, 179.) She also told the doctor that she experienced auditory and visual hallucinations "only when intoxicated with speed." (AR 177.) The psychiatrist diagnosed Plaintiff with mood disorder, not otherwise specified, and assessed a global assessment of functioning ("GAF") score of 50. (AR 178.) He or she prescribed Risperdal and discharged Plaintiff that night. (AR 178.)

The ALJ noted this visit to Arrowhead Regional, emphasizing Plaintiff's admission at the time that she had been on a month-long drug binge and that she only experienced hallucinations when she was

---

[1] Section 5150 of the California Welfare and Institutions Code provides that a mentally-disordered person who is a danger to herself or others may be involuntarily committed to a mental health facility for a 72-hour treatment and evaluation period.

4

using drugs.  (AR 43.)  The ALJ rejected this opinion in favor of the opinion of psychiatrist Linda Smith, a consultative examiner who had examined Plaintiff twice in connection with her current social security application and once before in connection with an earlier application.  (AR 44-45.)  Dr. Smith concluded that Plaintiff was completely faking a psychotic disorder and that she had no significant mental impairments that would preclude her from working.  (AR 248-57, 288-96.)

The ALJ's reasons for discounting the treating psychiatrist's opinion--that Plaintiff's purported breakdown was due to binging on methamphetamine for a month--was specific and legitimate and supported by substantial evidence in the record.  Thus, his rejection of the opinion was not error.  *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (reaffirming ALJ may reject a treating doctor's opinion that is contradicted by another doctor's opinion so long as she provides specific and legitimate reasons supported by substantial evidence in the record for doing so).  For this reason, this claim is rejected.

In her third claim, Plaintiff contends that the ALJ did not properly consider the opinions of treating psychiatrist Imelda Alfonso and treating psychologist Jon Held, both of whom saw Plaintiff in 2007 at the San Bernardino County Department of Behavioral Health.  (Joint Stip. at 13-15.)  Dr. Alfonso saw Plaintiff on February 5, 2007, and reported that she was disheveled, that her mood was depressed, and that she reported hearing voices telling her "they" will kill her.  (AR 309.)  Dr. Alfonso diagnosed major depressive disorder, recurrent and severe with psychotic features, and assessed a GAF score of 42.  (AR 309.)  On March 7, 2009, Dr. Held endorsed a form, apparently completed by clinician Lizeth Peter on January 29, 2007, in which

Plaintiff was diagnosed with major depressive disorder, recurrent severe with psychotic features, and a GAF score of 42. (AR 319.)

In his decision, the ALJ noted these treating source statements and the GAF assessments, but concluded that "[a]lthough such a [GAF] score does indicate some limitations in her functioning, this score represents merely a snapshot in time and is not supported by the overall medical evidence of record and does not speak directly to her work capacity over a consecutive 12 month period or longer." (AR 43-44.) Accordingly, the ALJ gave more weight to Dr. Smith's opinion that Plaintiff did not suffer from a severe mental impairment that caused functional limitations. (AR 44.) This was not error.

GAF scores are a snapshot of a patient's then-current functioning. *See* Diagnostic and Statistical Manual of Mental Disorders, Fourth Edit., Text Revision, at p. 33. The doctors who assessed Plaintiff's GAF at the San Bernardino Mental Health Clinic made clear that their assessments were of Plaintiff's current GAF. (AR 309.) Thus, the ALJ did not err in pointing this out and relying on it, in part, to discount these opinions.

In addition, as the ALJ pointed out, these scores and the opinions that went along with them were inconsistent with the medical record, which established that Plaintiff did not suffer from the extreme psychiatric maladies she complained of. Though the ALJ should have set forth which parts of the record were inconsistent with the doctors' conclusions, the Court finds that in this failure can be overlooked because there was so much in this record to support the ALJ's discounting of these doctors' opinions.

As a starting point, the Court notes the context in which Plaintiff went to the clinic for treatment. Plaintiff applied for

1 benefits prior to this case and that application was denied.  (AR 37.)
2 In October 2005, she filed the current application.  (AR 87, 91.)
3 That application was denied initially in April 2006, and on
4 reconsideration in November 2006.  (AR 49-53, 60-65.)  In December
5 2006, Plaintiff requested a hearing before an ALJ.  (AR 66.)  On
6 January 12, 2007, that requested was granted.  (AR 67-68.)  Seventeen
7 days later, on January 29, 2007, Plaintiff reported to the San
8 Bernardino Mental Health Clinic and complained about her
9 hallucinations.  (AR 311.)

10      Plaintiff's argument must also be considered in the context of
11 the ALJ's findings regarding Plaintiff's credibility.  The ALJ found
12 that Plaintiff was not credible and noted that Dr. Smith believed that
13 she was simply pretending to be suffering from a psychotic impairment.
14 (AR 46.)  Plaintiff has not challenged this credibility finding.  This
15 unchallenged credibility finding undermines Plaintiff's claim that the
16 ALJ erred in rejecting the treating psychiatrist's and psychologist's
17 findings because these opinions were based on Plaintiff's statements
18 to these doctors.  *See*, *e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144,
19 1149 (9th Cir. 2001) (holding that ALJ was free to disregard
20 physician's opinion that was premised on subjective complaints, where
21 ALJ properly discounted claimant's credibility); *Siska v. Barnhart*,
22 No. C 00-4788 MMC, 2002 WL 31750220, at *3 (N.D. Cal. Dec. 4, 2002)
23 (holding that claimant failed to show that ALJ erroneously rejected
24 the treating physician's assessment where that assessment was based on
25 the claimant's properly rejected subjective statements).

26      With this backdrop, the Court turns to the merits of Plaintiff's
27 claim.  It is clear that the ALJ did not err in discounting the
28 doctors' opinions.  What Plaintiff is really complaining about is that

the ALJ did not accept her version of the facts.  The ALJ was presented with two divergent sets of "facts."  One set, from Dr. Smith and the Agency reviewing doctors, suggested that there was little if anything wrong with Plaintiff, particularly when she was not taking drugs, and that she was feigning a mental illness.  The other, from Plaintiff's treating doctors, suggested that Plaintiff suffered from a severe psychiatric impairment.  The ALJ had the benefit of seeing Plaintiff testify under oath at the hearing.  There, Plaintiff reported that she did not know how old she was, where she was born, or how old two of her three children were.  (AR 4-5, 13.)  Ultimately, the ALJ found that Plaintiff was not credible and accepted Dr. Smith's version of the "facts" over the treating doctors' versions.  There was ample evidence in the record for him to do so.  As such, this finding will not be disturbed.

In her fourth claim, Plaintiff contends that the ALJ erred in finding at step two that her mental impairment was not severe.  (Joint Stip. at 17-18.)  She notes, for example, that Dr. Alfonso and Dr. Held found that she was more than minimally impaired and argues that that should be enough to support a favorable finding at step two. (Joint Stip. at 17-18.)  The Agency argues that Plaintiff is simply mistaken and that the ALJ did, in fact, find that her mental impairment was severe. (Joint Stip. at 18.)

At step two of the five-step disability analysis, an ALJ is tasked with identifying those impairments that have more than a minimal effect on a claimant's ability to do basic work activities. *Powell v. Chater*, 959 F. Supp. 1238, 1242 (C.D. Cal. 1997).  It is intended to be a *de minimis* screening device to allow the ALJ to

dispose of groundless claims at an early stage.  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Contrary to the Agency's argument, the ALJ found at step two that Plaintiff's mental impairments were not severe.  (AR 39 ("Because the claimant's medically determinable mental impairments, including the claimant's history of polysubstance abuse, cause no more than "mild" limitation in any of the first three functional areas and "no" limitation in the fourth area, they are not severe (20 C.F.R. 404.1520a(d)(1) and 416.920a(d)(1)).").)  However, this finding was consistent with the ALJ's ultimate conclusion in this case, namely, that Plaintiff did not suffer from a psychotic disorder and was exaggerating her symptoms to make it appear that she did.  (AR 43-47.)  Further, and importantly, this finding was also supported by the medical record.  As such, the ALJ did not err here.

In her fifth claim, Plaintiff contends that the ALJ did not make the specific findings required by the governing regulations regarding the degree of functional limitation imposed by her "severe" mental impairment.  (Joint Stip. at 19-20, citing 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2).)  Plaintiff is mistaken for two reasons.  First, the ALJ found that Plaintiff's impairment was not severe.  Second, he did make the specific findings Plaintiff claims he failed to make.  (AR 39 ("Because the claimant's medically determinable mental impairments, including the claimant's history of polysubstance abuse, cause no more than "mild" limitation in any of the first three functional areas and "no" limitation in the fourth area, they are not severe (20 C.F.R. 404.1520a(d)(1) and 416.920a(d)(1)).").)  Thus, this claim is rejected.

In her sixth claim, Plaintiff contends that the ALJ failed to incorporate the functional limitations caused by her mental impairment into the hypothetical questions that he posed at the vocational expert at the administrative hearing. (Joint Stip. at 20-22.) This argument, too, is rejected. The ALJ found that Plaintiff did not have a severe mental impairment. Therefore, there was no need to include in the hypothetical question to the vocational expert any functional limitations caused by the non-existent mental impairment. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).

For all these reasons, the Agency's decision is affirmed.

IT IS SO ORDERED.

DATED: September 29, 2009.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\RAY, N 0523\NancyRayMemo_Opinion.wpd

10